UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKESIDE SURFACES, INC.,
a Michigan corporation,

     Plaintiff,

     v

CAMBRIA COMPANY, LLC a foreign
limited liability company,

     Defendant.

                   /

Case No. 1:18-cv-00110

HON. JANET T. NEFF

| | |
|---|---|
| Scott R. Murphy (P68015) | Michael P. Donnelly (P45221) |
| William J. Leeder, III (P70708) | Paul C. Mallon, Jr. (P79880) |
| BARNES & THORNBURG LLP | FRASER TREBILCOCK DAVIS & |
| 171 Monroe Ave NW, Suite 1000 | DUNLAP, P.C. |
| Grand Rapids, Michigan  49503 | One Woodward Avenue, Suite 1550 |
| Telephone: (616) 742-3930 | Detroit, Michigan  48226 |
| Fax: (616) 742-3999 | Telephone: (313) 37-7300 |
| smurphy@btlaw.com | Fax:  (313) 961-1651 |
| bleeder@btlaw.com | mdonnelly@fraserlawfirm.com |
| *Attorneys for Plaintiff* | pmallon@@fraserlawfirm.com |
| | *Attorneys for Defendant* |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Lakeside Surfaces, Inc. ("Lakeside") by and through its

attorneys, Barnes & Thornburg LLP, and for its First Amended Complaint, states as follows:

INTRODUCTION

1.     Lakeside brings this action for injunctive and other relief seeking to avoid the

total destruction of its franchise and prevent Cambria Company, LLC from unilaterally

terminating its franchise in contravention of the Michigan Franchise Investment Law ("MFIL").

2.        On January 3, 2018, Lakeside was told that its Lexus Partner program with Cambria® was subject to immediate termination because it "discovered" that Lakeside was taking on a new quartz product competitive to Cambria.  At the time, 98% of all the quartz slabs purchased by Lakeside during the calendar year 2017 were Cambria surfaces.  Cambria also informed Lakeside that it was immediately stopping all future deliveries of Cambria quartz slabs because of Lakeside's perceived breach.

3.        On January 11, 2018, Cambria sent Lakeside a formal termination letter citing an unspecified breach as the basis for termination.  No opportunity to cure was provided by Cambria.  Instead, Lakeside was left holding the bag with over $500,000 in purchase orders from customers that were in process.  Cambria even cancelled orders for the 120 slabs of Cambria quartz previously ordered by Lakeside.

4.        Cambria fabricated a reason to terminate Lakeside.  Since the inception of the parties' relationship, Cambria has known that Lakeside stocks small quantities of "other quartz products."  Indeed, the parties' Lexus Partner Program only requires that "Cambria is the lead quartz surfacing product offered (80% of business)" and Lakeside has provided Cambria with monthly Lexus Partner metrics detailing every slab cut by Lakeside.  *See* Ex. A, Neiger Aff.  As explained in the affidavit of Mr. Neiger, the monthly reports identify the number of Cambria slabs cut by Lakeside as well as the number of "other quartz slabs" cut by Lakeside.

5.        Despite the serious consequences for terminating a franchise in violation of MFIL, Cambria has unilaterally terminated Lakeside from the Lexus Partner program without notice or good cause and without providing an opportunity to cure.  Lakeside brings this action for injunctive relief to enforce the notice and cure provisions found in MCL § 445.1527(c) and to compel Cambria to satisfy the purchase orders it illegally cancelled.

PARTIES

6.　　Plaintiff, Lakeside, Inc. is a Michigan Corporation with its principal place of business located at 6274 Norton Center Dr., Norton Shores, Michigan 49411.

7.　　Defendant Cambria Company, LLC is a Minnesota company.  Based on removal papers filed by Cambria Company, LLC in the United States District Court for the District of California, the members of Cambria are also Minnesota residents.  *See* Case No. 5:17-cv-01362-JGB-KK [Dk. 1 at p. 4]; United States District Court for the Central District of California, Eastern Division.

JURISDICTION AND VENUE

8.　　This is an action for (i) breach of contract; (ii) violation of the Michigan Franchise Investment Law; and (iv) injunctive relief and damages.

9.　　This Court has diversity jurisdiction over this matter as Cambria is a foreign corporation, its members are not residents of the state of Michigan and the amount in controversy exceeds $75,000.

10.　　This Court has personal jurisdiction over Cambria because Cambria regularly conducts business in this District and operates a franchise within this District.

11.　　Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) as a substantial part of the events and transactions at issue in this case occurred in this District and jurisdiction is proper under MFIL.  Specifically, the forum selection clause contained in the Credit Agreement (as described below) is void and unenforceable under Michigan law because it "require[es] that … litigation be conducted outside [Michigan]," which is explicitly prohibited under MCL § 445.1527(f).

## FACTUAL BACKGROUND

12.     Lakeside is one of the largest fabricators of quartz, solid surface, and natural stone countertops in Michigan.

13.     Lakeside purchases solid surface products from manufacturers such as Cambria®, fabricates the product in accordance with the specifications provided by its customers, and then sells the fabricated products to retailers, builders, designers and commercial firms as well as local kitchen and bath stores.

14.     Cambria has become a top selling countertop for many designers and home builders throughout Michigan as well as the Country, and approximately 98% of the products sold by Lakeside are manufactured by Cambria.  In 2011, Cambria honored Lakeside by recognizing Lakeside as the 14th Lexus Partner in North America.  Since that time, Lakeside has devoted millions of dollars promoting the Cambria brand and reputation within Michigan and Northern Ohio.

15.     On or about October 11, 2011, the parties entered into certain Business Partner Agreements in connection with the Lexus Partner Program.

16.     The Business Partner Agreements consisted of: (i) Cambria CFA Lexus Credit Agreement; (ii) Security Agreement; (iii) Order Terms and Conditions; (iv) Lifetime Limited Warranty; and (iv) Business Operating Requirements Manual Acknowledgement Form ("BORM").  Cambria has possession of the Business Partner Agreements.

17.     The Business Partner Agreements are silent regarding termination.  However, under MFIL Cambria must establish good cause, notice and an opportunity to cure prior to terminating a franchise.  MCL § 445.1527(c).

4

18.     The Business Operating Requirements Manual set forth the "Lexus Partner Program Requirements" and required a significant investment and commitment from Lakeside to devote all of its efforts to promoting the Cambria brand.

19.     For example, Lakeside was required to offer Cambria as "the lead quartz surfacing product offered (80% of business)."  Over the years, Cambria has far exceeded this requirement.  In 2015, Cambria sales reflected 86.6% of Lakeside's $19,126,845 in total sales. In 2016, Cambria represented 94.6% of Lakeside's $22,769,145 in total sales, and in 2017, 98% of Lakesides $23,467,366 in total sales came from Cambria products.

20.     Lakeside's employees were also required to attend "Cambria University" located in Minneapolis at Cambria headquarters.  The training was extensive as Lakeside was required to have certified field service technicians on staff to handle warranty claims.  The training focused on best practices for fabrication and installation as well as protocols for handling warranty claims.   Lakeside spent approximately $5,000 annually for employees to attend Cambria University.  Lakeside's sales force was also required to attend an in-home selling program through "Rodney Webb University" which Cambria hosted in Minneapolis.  To attend the courses, Cambria required that Lakeside pay for its own travel expenses.  Lakeside incurred approximately $30,000 in training costs for its sales team and fabricators to attend Cambria University.

21.     Cambria also obligated Lakeside to "invest more than $50,000 in Cambria point of sale materials per year."  Lakeside's investment far exceeded this requirement as well.  Since 2015, Lakeside has invested $922,270.70 in point of sale advertising to promote the Cambria brand within its territory.

22.     The advertising expenses included, for example, cheese boards and floor display stands that Lakeside would purchase and install at its customer locations as a gift to its customers to promote Cambria products.

23.     Cambria would regularly invoice Lakeside for the advertising materials and Cambria paid for all the materials at regular cost.

24.     In 2016, Lakeside built the Cambria Design Gallery (the "Cambria Gallery") in Grand Rapids, Michigan in response to a gallery mandatories chart presented by Cambria. Lakeside invested over $1 million dollars in the Cambria Gallery which opened in April of 2016. In fact, the Cambria sign alone cost over $12,000 and had to be approved by Cambria.

25.     In addition to the investments in branding and the Cambria Gallery, Lakeside also constructed a new fabrication facility in 2016-2017 at the request of Cambria.  For the past several years, Cambria has pushed its fabricators in the Lexus Partner Program to increase capacity to handle at least 50,000 square feet of Cambria slabs per month and to sell "exclusively" Cambria products.  Lakeside made the investment in a new facility and increased its Cambria sales to 98% of total product sold with the expectation that Cambria would make Lakeside the sole source provider of Cambria products in Michigan.  The new facility officially opened on April 20, 2017.

26.     Lakeside's total investment in the new fabrication plant was $6,296,377.

27.     Lakeside's fabrication capacity more than doubled after the new facility opened.

28.     On August 30, 2017, Lakeside met with John Brekke, Marty Davis (Cambria President and CEO), Tripp Parker (Cambria Senior Vice President of North American Sales) and Peter Martin (Executive Vice President) at Cambria Headquarters in Le Sueur, Minnesota.

Lakeside expressed its desire and expectation that Cambria consolidate the Michigan market by making Lakeside the sole fabricator.

29.     Lakeside continued to discuss with Cambria its desire to become the single Lexus partner in Michigan.  On October 16, 2017, Cambria indicated that it would review Lakeside's strategic plan on how it would service the Michigan and Northern Ohio territory if it became the single Lexus partner in Michigan.

30.     Lakeside also discussed growth in the builder segment which required some lower cost options and alternatives to the Cambria product.  Cambria agreed that different products would need to be offered and provided Lakeside with a brochure from another Lexus partner who was offering a granite product in its builder segment.

31.     The following month, Cambria expressed concern over Lakeside starting a granite program and indicated that they have not had a chance to approve it.  However, after the parties discussed the program Cambria gave the verbal "ok" to proceed based on Mr. Brekke's prior representations.

32.     On January 3, 2018, Lakeside received an email from Cambria regarding Lakeside carrying a new quartz product called Aurea Stone.  At the time, Lakeside had not even purchased any product from Aurea and 98% of the product Lakeside sold in 2017 was Cambria.

33.     Cambria stated that "supplying other quartz is an immediate termination of our partnership as well understood" and they stopped shipment on all further orders.

34.     However, Cambria has known from the inception of the parties' relationship that Lakeside has cut other quartz.

35.     Cambria receives a "Monthly Cambria Lexus Partner Business Metrics" memo along with an explanatory email stating the amount of Cambria slabs cut each month as well as "other quartz cut."

36.     Cambria requires Lakeside to provide this report to verify that it complies with the 80% requirement set forth in the Lexus Partner Program.

37.     On Tuesday, January 9, 2018, Lakeside was informed that Cambria was terminating Lakeside because of its purported breach of the terms of Cambria's Lexus Partner requirements.  Cambria never specified how Lakeside breached the program nor did they offer Lakeside any opportunity to cure the breach.

38.     On January 11, 2018, Lakeside received a letter from Cambria reiterating that Lakeside was in breach and that the parties' relationship was terminated.  The termination letter included self-serving language suggesting that the termination was mutual.

39.     Cambria's termination notice, however, was deceptive in several respects, including the implication that termination of the business relationship was mutual and amicable.

40.     To the contrary, Cambria unilaterally terminated Lakeside without notice and immediately stopped all shipments of Cambria product.

41.     Following its unilateral termination, Cambria contacted customers of Lakeside and informed them of the termination.  As a result, Lakeside received a number of communications from customers who were concerned and confused.

42.     On January 17, 2018, Lakeside received a transition agreement from Cambria. Under the transition agreement offered by Cambria:

> Cambria shall have no obligation to supply any further Products to Lakeside but may fulfill Lakeside's purchase orders on a case-by-case basis in Cambria's discretion.

43.     Lakeside has never agreed to the terms of the one-sided transition agreement, which included a full release as to Cambria only as well as the requirement that Lakeside disclose all of its customer contacts.

44.     Lakeside has also been forced to lay off employees as a result of Cambria's termination of the Lexus Partner Program as Lakeside can no longer fulfill its customer purchase orders.

45.     Cambria's unilateral termination has caused Lakeside monetary damages which are impossible to calculate.

46.     Over the past 20 years, Lakeside has developed close relationships with its customers and depends exclusively on those relationships to fabricate and sell its products.  The damage to Lakeside's reputation and goodwill with its customers cannot be monetized.

47.     Cambria's lack of notice of termination, unreasonable notice of termination, and wrongful termination also harmed Lakeside's reputation due to lost orders, unfulfilled orders, and confusion regarding Lakeside and Cambria's business relationship.

COUNT I
BREAK OF CONTRACT
(WRONGFUL TERMINATION)

48.     Lakeside incorporates by reference the preceding paragraphs as if fully set forth herein.

49.     Lakeside and Cambria entered into several contracts as reflected by the Business Partner Agreements.

50.     Pursuant to the BORM, Lakeside was made a Lexus Partner authorized to sell Cambria product subject to certain program requirements.

51.     Cambria breached the parties' contract when it fabricated a reason to terminate the Business Partner Agreements by claiming that Lakeside was required to sell exclusively Cambria product when the BORM only requires "80% of business."

52.     Cambria breached the parties' contract by failing to provide reasonable written notice to Lakeside specifying all the reasons for the termination.

53.     Cambria breached the parties' contract by failing to provide Lakeside with a reasonable opportunity to cure any purported breach as required by MFIL.

54.     Cambria did not have good cause to terminate Lakeside.  MCL § 445.1527(c).

55.     Cambria violated the MFIL in its dealings with Lakeside.

56.     Cambria also violated the implied covenant of good faith and fair dealing by unilaterally terminating the Business Partner Agreements without good cause, without notice and without providing an opportunity to cure, and by disrupting Lakeside's ability to sell product to its customers.

57.     As a direct and proximate result of Cambria's wrongful termination, Lakeside has been damaged in an amount of actual damages to be determined at trial together with costs, disbursements and reasonable attorneys' fees.

WHEREFORE, Plaintiff, Lakeside Surfaces, Inc., requests entry of judgment in its favor and against Cambria and award Lakeside direct, incidental and consequential damages in excess of $75,000.00, and award Lakeside its costs, attorneys' fees and all other relief this Court deems just and proper.

COUNT II
VIOLATION OF THE MICHIGAN FRANCHISE INVESTMENT LAW
(Section 445.1505, 1508 and 1527)

58.     Lakeside incorporates by reference the preceding paragraphs as if fully set forth herein.

59.     Lakeside is a franchisee pursuant to the Michigan Franchise Investment Law, MCL § 445.1502.

(a)     Lakeside was granted the right to engage in the business of offering, selling or distributing Cambria quartz products as a Lexus Partner, a program prescribed in substantial part by Cambria.

(b)     Lakeside was granted the right to engage in the business of offering, selling or distributing Cambria quartz products that were substantially associated with the Cambria trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor.

(c)     Lakeside was required to pay indirect franchise fees consisting of annual training costs in excess of $30,000, attendance at Cambria University, investment of more than $50,000 in display advertising such as cheese boards, Cambria signs, automobile wraps, and various other services.

60.     MCL § 445.1505(c) provides that "[a] person shall not, in connection with the filing, offer, sale, or purchase of any franchise, directly or indirectly: (c) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit."

61.     Subsequent to executing the Business Partner Agreements, Cambria and Lakeside began discussing a material expansion of Lakeside's franchise territory so that Lakeside would become the exclusive Lexus partner for Michigan.

62.     In order to qualify as the exclusive Lexus partner in Michigan, Cambria represented to Lakeside that it would need to meet certain conditions and expand its ability to advertise, market and fabricate Cambria's products.

63.     In reliance upon Cambria's representations, Lakeside (i) built the Cambria Gallery, (ii) constructed a new fabrication facility and (iii) increased its Cambria sales to 98% of total product sold.

64.     Lakeside took these actions with the expectation that Cambria would modify the Business Partner Agreements and make Lakeside the exclusive Lexus partner for Michigan.

65.     Lakeside had no obligation to take any of these steps under the Business Partner Agreements.   In fact, Lakeside would not have made these investments but for the fact that Cambria had represented to Lakeside that each step was necessary for Lakeside to become the exclusive Lexus partner in Michigan.

66.     Cambria deceitfully encouraged Lakeside to make these significant capital investments in order to expand Lakeside's capacity to fabricate and sell Cambria's product. However, Cambria never had any intention of making Lakeside the exclusive Lexus partner for Michigan and refused to do so even after Lakeside satisfied all of Cambria's conditions.

67.     As a direct a proximate result of Cambria's conduct, Lakeside has been damaged

68.     Additionally, MCL § 445.1508 provides that

[a] franchise shall not be sold in this state without first providing to prospective franchisee, at least 10 business days before the execution by the prospective franchisee of any binding franchise or other agreement or at least 10 business days before the receipt of any consideration, whichever occurs first, a copy of the disclosure statement described in subsection (2), the notice described in subsection (3), and a copy of the of all proposed agreements relating to the sale of the franchise.

69.     Cambria has never provided any of the mandatory disclosures required pursuant to MCL § 445.1508 and has therefore violated the MFIL.

70.     Pursuant to MCL § 445.1527(c), Cambria is prohibited from terminating the parties Business Partner Agreements without good cause and providing Lakeside a reasonable opportunity to cure.

71.     Cambria failed to provide reasonable written notice to Lakeside specifying all the reasons for the termination.

72.     Cambria failed to provide Lakeside with a reasonable opportunity to cure any purported breach in accordance with MFIL.

73.     Cambria did not have good cause to terminate Lakeside.  MCL § 445.1527(c).

74.     Cambria violated the MFIL in its dealings with Lakeside.

75.     As a direct and proximate result of Cambria's violations of the MFIL, Lakeside has been damaged in an amount of actual damages to be determined at trial together with costs, disbursements and reasonable attorneys' fees.

WHEREFORE, Plaintiff, Lakeside Surfaces, Inc., requests entry of judgment in its favor and against Cambria and award Lakeside direct, incidental and consequential damages in excess of $75,000.00, and award Lakeside its costs, attorneys' fees and all other relief this Court deems just and proper.

COUNT III
<u>VIOLATION OF THE UNIFORM COMMERCIAL CODE</u>
(Section 309)

76.     Lakeside incorporates by reference the preceding paragraphs as if fully set forth herein.

13

77.     Lakeside and Cambria engaged in the sale of goods and services whereby Lakeside purchased goods from Cambria.

78.     Pursuant to the BORM agreement, Lakeside was obligated to purchase at least two truckloads of Cambria product per month.

79.     This requirement was tracked every month by Cambria in the monthly score card which specified the number of slabs ordered from Cambria.

80.     In addition, Lakeside would specify the exact quantity of slabs that it would purchase each month when it submitted its purchase order electronically through Cambria's web portal.

81.     In return, Cambria would issue an invoice to Lakeside for each purchase order that would specify the unit of measure, quantity shipped, unit price and extended price.

82.     The Business Partner Agreements, purchase orders and corresponding invoices do not contain a provision governing termination of the parties' contractual relationship.  However, under Section 309 of the UCC, Cambria was obligated to provide reasonable notice of termination of the agreements.

83.     Cambria failed to provide reasonable notice of termination.  Instead, Cambria unilaterally terminated the Business Partner Agreements on or about January 9, 2018.

84.     Cambria was obligated to act in good faith in its longstanding business relationship with Lakeside pursuant to the Uniform Commercial Code.

85.     Cambria failed to provide reasonable notice under the UCC and failed to act in good faith.

86.     As a direct and proximate result of Cambria's wrongful termination under the UCC, Lakeside has been damaged in an amount of actual damages to be determined at trial together with costs, disbursements and reasonable attorneys' fees.

WHEREFORE, Plaintiff, Lakeside Surfaces, Inc., requests entry of judgment in its favor and against Cambria and award Lakeside direct, incidental and consequential damages in excess of $75,000.00, and award Lakeside its costs, attorneys' fees and all other relief this Court deems just and proper.

## COUNT IV
### PROMISSORY ESTOPPEL

87.     Lakeside incorporates by reference the preceding paragraphs as if fully set forth herein.

88.     Cambria made numerous representations to Lakeside that their business relationship would continue and that Cambria would make Lakeside a sole source supplier of Cambria products.

89.     Lakeside acted in reliance upon Cambria's representations and made substantial investments into expanding and increasing its sales of Cambria's product.

90.     Cambria induced Lakeside into making substantial investments in the Cambria brand and intended for Lakeside to rely upon its representations concerning a continued business relationship.

91.     Lakeside relied upon Cambria's representations to its detriment.

92.     As a direct and proximate result of Cambria's representations, Lakeside has been damaged in an amount of actual damages to be determined at trial together with costs, disbursements and reasonable attorneys' fees.

WHEREFORE, Plaintiff, Lakeside Surfaces, Inc., requests entry of judgment in its favor and against Cambria and award Lakeside direct, incidental and consequential damages in excess of $75,000.00, and award Lakeside its costs, attorneys' fees and all other relief this Court deems just and proper.

COUNT V
DECLARATORY RELIEF

93.     Lakeside incorporates by reference the preceding paragraphs as if fully set forth herein.

94.     This is an action for declaratory relief under 28 U.S.C. § 2201, Fed. R. Civ. P. 57 and applicable law.

95.     An actual controversy exists concerning whether Cambria has good cause to terminate the Business Partner Agreements.

96.     An actual controversy exists concerning whether Cambria has provided reasonable notice and an opportunity to cure the alleged breach of the Business Partner Agreements.

97.     Lakeside also seeks a declaration that it owns all of the display floor stands it purchased from Cambria as well as all other advertising materials such as exemplar slabs, samples, cheese boards, magazines and other material.

98.     Lakeside purchased the floor stand displays and installed them it its showrooms and in the showrooms of its customers.

99.     Lakeside is entitled to retain all of the floor stand displays as it sees fit and to outfit the displays with product of its choosing.

WHEREFORE, Lakeside respectfully requests that this Court enter a judgment (i) declaring that Cambria wrongfully terminated the parties' contract, (ii) declaring that Lakeside is

16

the rightful owner of all floor plan displays and related advertisement goods and materials it purchased, and (iii) granting any and all other relief that is just and proper including, without limitation, attorneys' fees under MFIL.

## JURY DEMAND

In accordance with its right under the Seventh Amendment, Lakeside relies upon its previously filed jury demand.

Dated: June 26, 2018                                    Respectfully submitted,


                                                        **LAKESIDE SURFACES, INC.**


                                                        By:   */s/ Scott R. Murphy*
                                                                  One of its Attorneys


Scott R. Murphy (P68015)
William J. Leeder, III (P70708)
BARNES & THORNBURG LLP
171 Monroe Avenue, N.W., Suite 1000
Grand Rapids, Michigan 49503
Telephone:  (616) 742-3930
Facsimile:  (616) 742-3999
smurphy@btlaw.com
bleeder@btlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2018 a copy of the foregoing pleading was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

Dated: June 26, 2018                         Respectfully submitted,

                                             BARNES & THORNBURG LLP

                                             */s/ Scott R. Murphy*
                                             Scott R. Murphy (P68015)
                                             Attorney for Plaintiff